IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Income Tax

| | | |
|---|---|---|
| JANICE M. JOHNSON, | ) | |
| | ) | |
| Plaintiff, | ) | TC-MD 130552N |
| | ) | |
| v. | ) | |
| | ) | |
| DEPARTMENT OF REVENUE, | ) | |
| State of Oregon, | ) | |
| | ) | **CORRECTED FINAL** |
| Defendant. | ) | **DECISION** |

This Corrected Final Decision is being issued to correct the appeal rights stated at the end of the Court's Final Decision.

The court entered its Decision in the above-entitled matter on June 17, 2014. The court did not receive a request for an award of costs and disbursements (TCR-MD 19) within 14 days after its Decision was entered. The court's Final Decision incorporates its Decision without change.

Plaintiff appealed Defendant's Notice of Refund Denial, dated September 26, 2013, for the 2012 tax year. A telephone trial was held in this matter on May 13, 2014. Plaintiff appeared and testified on her own behalf. Tony Inovejas (Inovejas), Tax Auditor, appeared and testified on behalf of Defendant. Plaintiff did not submit any exhibits. Defendant's Exhibits A to H were received without objection.

## I. STATEMENT OF FACTS

For the 2012 tax year, Plaintiff claimed a working family child care credit (working family credit) and a child and dependent care credit (child care credit) based on child care payments of $4,500. (Ptf's Compl at 16.) Defendant allowed Plaintiff a working family credit

/ / /

CORRECTED FINAL DECISION  TC-MD 130552N　　　　　　　　　　　　　　　　1

and a child care credit based on child care expenses of $1,000 and disallowed the remaining child care expenses claimed by Plaintiff. (*Id.*)

Plaintiff testified that, from January through May 2012, she received compensation of $900 per month from the State of Oregon to provide in-home care for her ailing mother who was wheelchair-bound and suffered from dementia. She testified that she also had some funds available from a retirement account through the State of Alaska. Plaintiff testified that, from January through May 2012, she lived in a house in Blue River, Oregon, with her mother, her seven-year-old daughter, and Kevin Juhala (Juhala), a friend who "provided child care including preparation for school, meals, and watching [Plaintiff's daughter] so that [Plaintiff] could work." (Def's Ex A.) Plaintiff testified that it was necessary for Juhala to provide child care to Plaintiff's daughter because caring for Plaintiff's mother was a 24-hour per day obligation for Plaintiff. Plaintiff testified that she had to assist her mother with daily activities such as eating, dressing, and bathing. She testified that, at times, she had to drive her mother 60 miles one way to the nearest town for medical services and would not have been able to arrange child care for her daughter if Juhala had not been available.

Plaintiff testified that she met Juhala through a friend in Portland and learned that their fathers had served together in the military. She testified that Juhala was unemployed at the time, January 2012, and he had some connection to Blue River, Oregon, so he agreed to provide child care for Plaintiff's daughter while Plaintiff cared for her mother. Plaintiff testified that Juhala was not in the business of providing child care and did not have any other work between January and May 2012. Plaintiff testified that her house in Blue River was about 3,000 square feet, so Juhala had his own space. She testified that she tried to contact Juhala for purposes of this appeal, but was unable to reach him despite sending letters to both Juhala and his family.

Plaintiff testified that she paid Juhala in cash at the rate of $250 per week to care for her daughter, though his preference was to receive payments of $1,000 once per month. Plaintiff provided four receipts for cash payments: three for $1,000 dated February 8, 2012, February 27, 2012, and March 30, 2012, and one for $1,500 dated May 2, 2012. (Def's Exs B, C.) Plaintiff testified that she paid Juhala a $500 bonus, but did not provide a receipt for that payment. (*See* Def's Ex E at 2 (Plaintiffs' letter stating Juhala "was paid an extra $500 in May for completing his agreement and to assist him with moving on"). In a letter to Defendant dated February 15, 2013, Plaintiff wrote that Juhala had "his own area" at the property. (Def's Ex A.) She testified that Juhala received free room and board in Plaintiff's house as part of his compensation.

Inovejas testified that he does not consider Plaintiff's payments to Juhala to be arm's-length because Juhala was a friend who lived in Plaintiff's home. He testified that, based on Plaintiff's receipt for $1,000 issued on the same date as a bank withdrawal for $4,800, Defendant allowed child care expenses of $1,000. (*See* Def's Ex D (Plaintiff's bank statement showing $4,800 was withdrawn from her account on February 8, 2012).) Plaintiff testified that she withdrew all of the funds for child care in one lump sum on February 8, 2012. She testified that she lived 60 miles from the nearest bank, so it was inconvenient to travel to the bank. Plaintiff testified that she does not understand why Defendant allowed her child care expenses of $1,000, but not the remaining expenses claimed.

## II. ANALYSIS

The issue before the court is whether Plaintiff is entitled to a working family credit and a child care credit for the 2012 tax year based on claimed child care expenses of $4,500.

ORS 315.262 provides a refundable credit, the working family child care credit, for qualifying taxpayers to partially offset child care costs incurred while taxpayers are working,

attending school, or "seek[ing] employment."[1]  ORS 315.262(3) states in, part, that "[a] qualified taxpayer shall be allowed a credit against the taxes otherwise due under ORS chapter 316 equal to the applicable percentage of the qualified taxpayer's child care expenses * * *."  Under ORS 315.262(1)(a), "child care" is "care provided to a qualifying child of the taxpayer for the purpose of allowing the taxpayer to be gainfully employed, to seek employment or to attend school on a full-time or part-time basis[.]"  "[T]he [working family] credit is limited to costs associated with child care" and such costs "must be made by the parent claiming" the working family credit.  OAR 150-315.262(3).  "Payments made by an entity or individual other than the parent claiming the credit are not payments made by the taxpayer."  *Id.*

ORS 316.078 provides a nonrefundable credit, the child care credit, for certain "employment-related expenses," including child care, paid by a taxpayer for the care of a dependent child or children.  The child care credit is specifically tied to IRC section 21.  The child care credit is "equal to a percentage of employment-related expenses allowable pursuant to section 21 of the Internal Revenue Code * * *."  ORS 316.078(1); *see also* OAR 150-316.078(1).[2]  IRC section 21(a)(l) provides a credit for a "percentage of the employment-related expenses * * * paid by such individual during the taxable year."  "Expenses are employment-related expenses only if they are for the purpose of enabling the taxpayer to be gainfully employed.  The expenses must be for the care of a qualifying individual or household services performed during periods in which the taxpayer is gainfully employed or is in active search of gainful employment."  Treas Reg 1.21-1(c).

/ / /

---

[1] The court's references to the Oregon Revised Statutes (ORS) are to 2011.

[2] OAR 150-316.078(1) states: "When calculating the Oregon child care credit, taxpayers must use the same employment related expenses used for calculating the federal credit, subject to the same limitations and eligibility requirements outlined in the IRC Section 21."

Plaintiff has the burden of proof and must establish her case by a "preponderance" of the evidence. ORS 305.427. A "[p]reponderance of the evidence means the greater weight of evidence, the more convincing evidence * * *." *Feves v. Dept. of Revenue,* 4 OTR 302, 312 (1971). This court has stated that the preponderance standard "mean[s] more likely than not." *Parker v. Dept. of Rev.*, TC-MD No 101057C, WL 4763133 at *7 (Oct 8, 2012). "[I]f the evidence is inconclusive or unpersuasive, the taxpayer will have failed to meet [her] burden of proof * * *." *Reed v. Dept. of Rev.,* 310 Or 260, 265, 798 P2d 235 (1990).

Plaintiff testified that she was employed between January and May 2012 by the State of Oregon to provide in-home care to her mother. Plaintiff testified that caring for her mother was a 24-hour per day job, so child care was a necessary expense during that time period. Plaintiff did not present any evidence of her employment in 2012 other than her sworn testimony. However, Defendant did not challenge Plaintiff's contention that she was employed from January through May 2012 and the court accepts Plaintiff's testimony as true. There is a question in this case of whether Plaintiff had sufficient funds to pay her claimed child care expenses. She testified that she received $900 per month from the State of Oregon, yet claims that she paid Juhala $1,000 per month and provided him with free room and board. Plaintiff testified that she also had some funds available through a retirement account, although she did not disclose the amount of those funds or offer any evidence related to the retirement account.

Defendant questions whether the transaction between Plaintiff and Juhala was arm's-length because they were friends. OAR 150-315.262(3)(b)(F) states that "[t]ransactions that are not arm's-length or have no economic substance" are not "[c]osts associated with child care." This court has stated that "[t]ransactions between related parties rightly generate heightened scrutiny, because of the increased potential for favorable treatment (*e.g.*, leniency when the

taxpayer cannot afford some or all of the amount due)[.]" *Carter v. Dept. of Rev.*, TC-MD No 080689C, WL 1351818 at *3 (Apr 30, 2009). However, "there is not a rebuttable presumption that a close relationship between parties implies that their transaction was not at arm's-length." *Lib-Myagkov v. Dept. of Rev.*, TC-MD No 091200C, WL 4736621 at *5 (Nov 23, 2010). In working family credit cases, "where payment is made in cash and the provider is a friend or relative of the taxpayer, the sworn testimony of the child care provider is critical. * * * These cases turn on a question of fact, hinging on the credibility of Plaintiffs and the provider." *Moua v. Dept. of Rev.*, TC-MD No 081230B, WL 739534 at *2 (Mar 4, 2010) (citations omitted).

Plaintiff testified that she made the claimed child care payments to Juhala in cash. Plaintiff is correct that there is no prohibition on paying for child care in cash. *See Shirley v. Dept. of Rev.*, TC-MD No 130451D, WL 811543 at *3 (Mar 3, 2014). However, "[w]hen a taxpayer decides to pay cash for child care expenses, the taxpayer has the burden of providing sufficient evidence to substantiate the total amount of the claimed expense." *Id.* Plaintiff's evidence substantiating the claimed child care expenses includes four signed receipts, one bank statement reporting a cash withdrawal of $4,800, and Plaintiff's sworn testimony. In some cases, that evidence may be sufficient to meet the burden of proof. Here, however, the claimed child care payments were made in cash to a friend who lived in Plaintiff's home. Additionally, Plaintiff's claimed child care payments exceeded her income from the State of Oregon. Under those circumstances, the sworn testimony of Juhala or some additional evidence to corroborate Plaintiff's testimony is necessary to prove that Plaintiff, more likely than not, paid Juhala $4,500 for child care in 2012.

/ / /

### III. CONCLUSION

After careful consideration, the court concludes that Plaintiff failed to prove by a preponderance of evidence that she paid child care expenses of $4,500 in 2012. Now, therefore,

IT IS THE DECISION OF THIS COURT that Plaintiff's appeal is denied.

Dated this ____ day of July 2014.

---

JILL A. TANNER
PRESIDING MAGISTRATE

*If you want to appeal this Corrected Final Decision, file a Complaint in the Regular Division of the Oregon Tax Court, by __mailing__ to: 1163 State Street, Salem, OR 97301-2563; or by __hand delivery__ to: Fourth Floor, 1241 State Street, Salem, OR.*

*Your Complaint must be submitted within __60__ days after the date of the Corrected Final Decision or this Corrected Final Decision cannot be changed.*

*This Corrected Final Decision was signed by Presiding Magistrate Jill A. Tanner on July 23, 2014. The Court filed and entered this Corrected Final Decision on July 23, 2014.*